UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JUSTIN MCLAUGHLIN and ATURINA ESHW, on behalf of themselves, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TAYLOR UNIVERSITY,<br><br>Defendant. | No. 1:23-cv-00527-HAB-ALT |

**PLAINTIFFS' MOTION TO COMPEL AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs Justin Mclaughlin and Aturina Eshw, on behalf of themselves and others similarly situated ("Plaintiffs"), by and through the undersigned counsel, respectfully move this Court to enter an order compelling Defendant Taylor University ("Taylor" or "Defendant") to produce a document likely containing a factual recitation of the underlying Data Breach. In particular, the Court should order Defendant to produce the document entitled "z_Overview of cyberincident-2024-03-08" (hereinafter referred to as the "Cyber Incident Overview") that was created following the data breach that occurred between February 26, 2023, and May 18, 2023 (the "Data Breach").[1]

Defendant incorrectly asserts attorney-client privilege and attorney work-product doctrine over the Cyber Incident Overview created after the Data Breach that is the subject of this action. Defendant's obstructionist tactics are not supported by the law and fly in the face of the basic principle that underlying facts relevant to the subject matter of litigation are not privileged. As the

---

[1] Plaintiffs are moving to compel on this limited basis only in an attempt to minimize the disputes that must take up judicial resources and will continue to attempt to work with opposing counsel to resolve the remaining disputes. Plaintiffs are hopeful that the Court's ruling here will preclude the need for further motions to compel on the question of privilege and work-product doctrine.

1

U.S. Supreme Court has succinctly explained, "[a] fact is one thing and a communication concerning the fact is an entirely different thing. The client cannot be compelled to answer the question, 'what did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Upjohn Co. v. United States*, 449 U.S. 383 (1981). This basic legal principle has not changed in the last forty-four (44) years and is universally accepted by state and federal courts across the country. Defendant cannot use privilege or work-product protections to obstruct Plaintiffs' investigation and essentially attempt to prevent Plaintiffs from developing any facts as to core elements of this case. The Court should grant Plaintiffs' motion and compel Defendant to produce the requested document.

## I. BACKGROUND

Between February 26 and May 18, 2023, Plaintiffs' and the Class's personally identifiable information ("Personal Information") was unauthorizedly disclosed to hackers and stolen in a Data Breach that took place over the course of several months. Class Action Complaint ("Compl.") ¶¶ 2, 39. The stolen Personal Information pertained to thousands of Defendant's current, former, and prospective students, its employees, and others, including their full names, Social Security numbers, and financial information. *Id.* ¶¶ 1, 39, 141. As a result of Defendant's failures, Plaintiffs' and the Class's Personal information has been released into the public domain on the dark web to be misused for fraudulent and criminal purposes. *Id.* ¶¶ 5, 140. Plaintiffs allege that Defendant breached its duty to implement reasonable cybersecurity safeguards to protect their and the Class Members' Personal Information, failing to implement industry standard cybersecurity safeguards, resulting in the Data Breach and widespread injury and damages to Plaintiffs and the proposed Class Members.

On October 16, 2024, Plaintiffs propounded their First Set of Requests for Production of Documents to Defendant, to which Defendant responded on December 20, 2024.[2] On March 17, 2025, Plaintiffs' counsel contacted Defendant's counsel via email regarding deficiencies in Defendant's Responses and to schedule a time to confer on those deficiencies.[3] On April 2, 2025, Defendant responded to Plaintiffs' deficiency email, and on April 11, 2025, the parties met and conferred to resolve the deficiency. On April 23, 2025, Defendant sent its second document production. In pertinent part, Defendant produced a privilege log indicating that it was withholding a document titled "z_Overview of cyberincident-2024-03-08," on the basis of attorney-client privilege and attorney work-product doctrine. *See* **Exhibit C.** In the description, Defendant described the withheld document as a "Confidential document providing information requested by counsel (McDonald Hopkins) for use in rendering legal advice regarding the incident that is the subject of this litigation."

Counsel for Plaintiffs have made reasonable efforts to reach agreement with Defendant regarding its objections but have ultimately been unsuccessful. After reviewing Defendant's privilege log, on May 8, 2025, counsel for Plaintiffs responded via email to Defendant's objections, outlining several reasons for why this was not an appropriate invocation of attorney-client privilege and attorney work-product doctrine—including that Defendant's own description of the document demonstrated it is a summary of facts and recommendations that does not offer

---

[2] Attached as **Exhibit A.**
[3] Specifically, the deficiencies Plaintiff raised included that Defendant's responses were filled with improper boilerplate objections; that forensic reports are not privileged under Indiana law, Defendant had failed to produce any privilege log to support its many assertions of attorney-client privilege; that Defendant's objection to the definition of the "Relevant Time Period" and suggested relevant time period of December 21, 2021 to December 21, 2023—a two-year time period—is too narrow; Defendant produced several documents that are untitled, undated, and unidentifiable; and although Defendant produced 498 pages in its document production, that not one of Defendant's Responses identifies by Bates Number which documents are responsive to the respective Request. *See* Plaintiffs' Deficiency Ltr., attached as **Exhibit B.**

3

legal guidance to Taylor University. *See* **Exhibit D.** On May 13, Counsel for Defendant replied that the document was "plainly work product" and that Defendant would not produce it. *Id.* Defendant is plainly wrong. *Id.*

Plaintiffs now seek the Court's assistance in resolving the parties' discovery dispute and seek an Order from the Court compelling Defendant to produce the withheld Cyber Incident Overview. Plaintiffs have no means to obtain this document other than through this motion.

## II. LEGAL STANDARD

*Attorney-Client Privilege*

The Seventh Circuit has adopted the summation of attorney-client privilege in in 8 Wigmore § 2292: "Where legal advice of any kind is sought (2) from a professional legal adviser *in his capacity as such*, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) [unless] the protection [was] waived." *Radiant Burners, Inc. v. Am. Gas Ass'n*, 320 F.2d 314, 319 (7th Cir. 1963) (emphasis added). But "the privilege would never be available to allow a corporation to funnel its papers and documents into the hands of its lawyers for custodial purposes and thereby avoid disclosure. Likewise, it seems well settled that the requisite professional relationship is not established when the client seeks business or personal advice, as opposed to legal assistance." *Id.* at 324. Moreover, when analyzing communications that have both business and legal purposes, courts in Seventh Circuit must determine whether seeking legal advice was the primary purpose of the communication. *In re Local TV Advertising Antitrust Litig.*, 2023 WL 5956851, at *12 (N.D. Ill. July 28, 2023). "The mere transmittal of this legal information by attorneys to their clients does not create a privilege. In fact, even when attorneys summarize the law in an objective, neutral manner, such summaries are not privileged merely

4

because an attorney was the author. Similarly, *information or facts an attorney acquires from non-public third-parties and communicates to their clients also do not transform into a privileged communication.*" *Id.* (emphasis added).

<u>Work-Product Doctrine</u>

It is axiomatic that under Rule 26(b), "…[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26. "[I]n order to come within the qualified protection from discovery created by Rule 26(b)(3) [the work product doctrine], a party claiming protection must show that the materials sought are: (1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party or by or for a party's representative. *Boyer v. Gildea*, 257 F.R.D. 488, 490–91 (N.D. Ind. 2009) citing *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 613–14 (N.D. Ill. 2000) (citing 8 Wright, Miller & Marcus, Federal Practice & Procedure: Civil 2D § 2024 (1994)).

"An item is work product only if it is primarily concerned with legal assistance." *Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 646 (N.D. Ill. 1994). Nevertheless, courts recognize a distinction between opinion and non-opinion work product. Legal opinion work product that contains the mental impressions of an attorney is often afforded absolute protection, but non-opinion or fact work product is subject to discovery on a showing of substantial need and undue hardship in procuring the requested material through other means. *Id.*; *see also Ferrell v. U.S. Dep't of Housing and Urban Development*, 177 F.R.D. 425, 431 (N.D. Ill. 1998); Fed. R. Civ. P. 26(b)(3)(A) (providing for production when "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent

5

by other means").

*Relief from Inappropriate Assertions*

Rule 37 addresses disputes in the discovery process and is designed to be used by litigants to compel a response to a discovery request where none has been made, or where the response is so inadequate that it is tantamount to no response at all. *Chalimoniuk v. Interstate Brands Corp.*, 2002 WL 1048826, at *1 (S.D. Ind. 2002). The Court has broad discretion when deciding whether to compel discovery. *See Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 2002 WL 453242, at *3 (S.D. Ind. Mar. 25, 2002) (recognizing that "district courts have broad discretion in matters related to discovery"). The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules. *Zenith Electronics Corp. v. Exzec, Inc.*, 1998 WL 9181, at *8 (N.D. Ill. 1998). Here, Defendant has failed to meet its burden to show that the requested document is exempt from production.

### III. ARGUMENT

This Court should compel production of the Cyber Incident Overview. Defendant has withheld under claim of work product and/or attorney-client privilege. Defendant has failed to carry its burden of establishing that the attorney-client privilege or work product doctrine apply.[4] Moreover, Defendant's privilege log provides such little information that it acts as a waiver.

**A. Defendant has failed to establish that the Cyber Incident Overview is privileged.**

Defendant asserts privilege over the Cyber Incident Overview by merely noting that it is a "Confidential document providing information requested by counsel (McDonald Hopkins) for use

---

[4] The burden is on the discovery opponent to establish that the work-product doctrine immunizes the documents at issue from discovery. *McNally Tunneling Corp. v. City of Evanston*, 2002 WL 59115, *2 (N.D. Ill. Jan. 14, 2002).

in rendering legal advice regarding the incident that is the subject of this litigation." **Exhibit C.** But the Cyber Incident Overview is nothing more than a factual recitation of what happened in the Data Breach based on Defendant's own internal forensics investigation. It was not done by attorneys, and it contains no legal advice whatsoever. Should the Court review the document *in camera*, the purely factual nature of the document will be abundantly clear. At best, it is a dual-purpose communication whose primary purpose was business related.

"A communication may only be privileged if its *primary purpose* is to gain or provide legal assistance. *In re Rutter's Data Sec. Breach Litig.*, 2021 WL 3733137, *4 (M.D. Pa. 2021) (emphasis added). Defendant does not even assert that the purpose of the cyber incident overview was to provide legal assistance at all, much less that it was the primary purpose of the document, rather than to determine the causes and possible remediation of the data breach. *See Guo Wengui v. Clark Hill, PLC*, 338 F.R.D. 7, 13–14 (D.D.C. 2021) (holding that data breach consultant's report was not protected by the attorney-client privilege where the consultant "undertook a full investigation — the only one apparently commissioned by [defendant] — with the goal of determining how the attack happened and what information was exfiltrated.").

Defendant's position is precisely the argument rejected by the Court in *In Re Eskenazi Health Data Incident Litig.*, No. 49D01-2111-PL-038870 (Marion Superior Court, July 5, 2023) (attached hereto as **Exhibit E**). There, the court examined the exact privilege claimed by Defendant here: that a post-breach document prepared under the direction of legal counsel was confidential. The court concluded the post-breach document was not subject to the attorney-client privilege because it "[was] a report of facts and recommendations that does not offer legal guidance to Eskenazi Health." The court further explained:

> The Court finds the CTIR Report to be analogous to the report which was deemed

> non-confidential in *Guo Wengui*.[5] While the Court understands Eskenazi Health's argument that the findings in the report assisted Hall Render in providing legal advice, the Court finds that the this highlights how the CTIR Report is merely tangential to providing such legal advice and was not communicated to Eskenazi Health to navigate its potential legal issues as an attorney's protected communications would be. It is ultimately a recitation of facts and analyses of data security issues related to Eskenazi Health's information technology infrastructure, which are the kinds of information the United States Supreme Court instructed should not be subject to any attorney-client privilege. *Upjohn*, 449 U.S. at 395.

*Eskenazi*, p. 7. *See also Brown v. Katz*, 868 N.E.2d 1159, 1168 (Ind. Ct. App. 2007) ("[L]egislatures create evidentiary privileges to shield selected information from discovery, and those shields may not be wielded as swords at the will of a party.").

As the court in Eskenazi noted, factual investigations after a data breach are commonplace and exist regardless of whether litigation ensues. The investigation is a textbook business function to determine what happened in hopes of preventing a similar event in the future and to build a list of affected persons so that the company can inform them of the breach. Indeed, affording privilege over these quintessentially business functions "would create perverse incentives for companies to add layers of lawyers to every business decision in hopes of insulating themselves from scrutiny in any future litigation." *In re Grand Jury*, 23 F.4th 1088, 1093–94 (9th Cir. 2021). Defendant's position, however, is apparently that any factual information given to counsel is privileged. But that position has long been rejected by the Seventh Circuit. *See United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999) ("The information that a person furnishes the preparer of his tax return is furnished for the purpose of enabling the preparation of the return, not the preparation of a brief or an opinion letter. Such information therefore is not privileged."); *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicate with the attorney.").

---

[5] *Guo Wengui v. Clark Hill, PLC*, 338 F.R.D. 7 (D.D.C. 2021).

At bottom, factual investigations after a data breach occur regardless of litigation. The work done by attorneys to assist companies in meeting their obligations to report data breaches to state authorities and affected persons is nothing more than a business function to comply with black-letter regulatory and statutory requirements. If every business function was transitioned to a legal function merely because of the existence of a statute or regulation, then the privilege would subsume all business functions, and its core purpose would be abandoned in furtherance of defendants' attempt to shield themselves from liability.

**B. Defendant has failed to establish that the Cyber Incident Overview is protected by the work-product doctrine.**

Defendant has failed to establish that the Cyber Incident Overview is protected from production by the work-production doctrine because the Cyber Incident Overview was not created in anticipation of litigation. Regardless, Plaintiffs have demonstrated an overriding substantial need.

*Not Created in Anticipation of Litigation*

First, Defendant has failed to explain how the document was created in anticipation of litigation. Indeed, businesses must investigate data breach to determine what happened so that they can attempt to prevent a future similar event and so they can inform authorities and customers that their data was affected. And nothing in the Indiana Data Breach Notification Statute provides that a company's notice obligations after a breach are contingent on litigation. Ind. Code § 24-4.9-3-1.[6] One way in which courts determine whether the material was really done in anticipation of

---

[6] Defendant will likely argue that data breach litigation is common, and so litigation was clearly foreseen. That rule would transform business functions to legal functions merely because of the possibility of litigation. In other words, it would mean that the more consumers attempt to assert their rights, the less often they are allowed to actually develop the facts of their case and realistically seek legal redress. That is especially true, when, as here, only Defendant has access to the underlying facts of the case and has attempted to use layers or lawyers to shield those facts by inserting them into business functions.

litigation is to analyze whether the report would have been produced in substantially the same form regardless of litigation. *In re Capital One Consumer Data Sec. Breach Litig.*, 2020 WL 3470261, at *4 (E.D. Va. June 25, 2020); *Guo Wengui v. Clark Hill, PLC*, 338 F.R.D. 7, 10 (D.D.C. 2021). As noted above, though, the Cyber Incident Overview would have been produced regardless of litigation.

In *Guo Wengui,* the court reasoned that a substantially similar document would have been produced in the ordinary course of business because "discovering how [a cyber] breach occurred [is] a necessary business function regardless of litigation or regulatory inquiries. [There is a] need [ ] to conduct an investigation . . . in order to figure out the problem that allowed the breach to occur so that [the organization] [can] solve that problem and ensure such a breach [cannot] happen again." 339 F.R.D. at 10–11 (*quoting In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 193 (E.D. Va. 2019), which in turn quoted *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1245–46 (D. Or. 2017). Similarly, for Defendant, discovering how the breach occurred was a "necessary business function." It needed to conduct a forensic investigation "to figure out the problem that allowed the breach to occur" so that Defendant could "solve that problem and ensure such a breach [cannot] happen again." *Id.*[7]

The same is true here. If Defendant cares about preventing a like attack in the future, then it would have conducted an investigation after the Data Breach regardless of litigation. Moreover, to comply with its data breach notification requirements, Defendant would have had to determine what files were unauthorizedly accessed or acquired and then perform a review of those documents

---

[7] The need for an investigation was even more critical in this case as the Data Breach occurred over the course of a staggering ***101 days*** before Defendant finally discovered the cyberattack. *See* Taylor University's letter to the Indiana Attorney General's Data Privacy and Identity Theft Unit, attached as Exhibit C. Indeed, it would border on gross negligence for a Defendant to not have investigated how the Data Breach happened and how to ensure such a massive breach did not happen again.

to determine whose information was included therein. None of that is contingent on the possibility, probability, or existence of litigation. So, because the Cyber Incident Overview would have been created regardless of litigation, the work-product doctrine does not apply.[8]

*Plaintiffs have demonstrated a substantial need and an undue hardship*

Just as critically, however, Plaintiffs have a substantial need for the Cyber Incident Overview and are faced with undue hardship with it because Plaintiffs cannot get it through other means. Even when materials are protected as work product, this qualified privilege can be rebutted "if the party seeking production demonstrates both a substantial need for the materials and that it would suffer undue hardship in procuring the requested information some other way." *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 2009 WL 1543651, at *9 (N.D. Ind. 2009); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir.1996).

So, even if the work-product doctrine applies, Defendant still must produce the Cyber Incident Overview. The simple truth is that data breach forensics investigations are done by the companies that get breached—not opposing counsel. The company has access to the company's information systems—not opposing counsel. Even if counsel for data breach plaintiffs spent the hundreds of thousands of dollars necessary to recreate the investigation, they would not have access to the company's information systems, and so they could not effectively perform a forensics investigation into what happened on that system. In these situations, courts demand the production of the non-opinion, factual material produced as result of such investigations—as non-opinion,

---

[8] Defendant's own Chief Information Officer noted that the response to the data breach was done as part of the business's incident response plan. Defendant cannot claim that the investigation was done in anticipation of litigation while also claiming that it was done as part of the business's standard operating procedure. The Echo News reported that "[o]nce a threat was identified, the Information Technology (IT) team began implementing a recently-formed incident response plan; they powered everything down— notifying the FBI, cyber insurance and cyber forensics teams of the incident." Kay Rideout, *TU Systems Face Cyberattack, IT Resolves Issue After Investigation*, (Sept. 18, 2023), https://www.theechonews.com/article/2023/09/tu-systems-face-cyberattack.

factual material is afforded less protection even when the work-product doctrine applies. *Vardon Golf Co.*, 156 F.R.D. at 646.

Here, Plaintiffs make the requisite showing of substantial need and undue hardship. As noted above, Plaintiffs' theory of the case is that Defendant failed to implement industry standard cybersecurity safeguards. As the name of the document itself suggests, the cyber incident overview is *critical* to Plaintiffs' claims regarding the security of Plaintiffs' Personal Information on Defendant's network. Although Plaintiffs cannot know for sure, the overview likely contains evidence of potential risks or vulnerabilities to the confidentiality, integrity, and availability of Personal Information on Defendant's network at the time of the Data Breach and an analysis of what happened during the Data Breach itself. To be sure, this is what all similar reports contain, and any doubts regarding the contents of the Cyber Incident Overview can easily be resolved via an *in camera* review.

Moreover, Plaintiffs do not have access to Defendant's information systems and nonetheless cannot rewind time to perform the forensics investigation on Defendant's information systems at it existed at the time of the Data Breach.[9] *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* 244 F.R.D. 412, 425 (N.D. Ill. 2006) ("Plaintiffs do not have the underlying data E & Y utilized in preparing its report, and without this information, it is not clear that witness depositions would provide Plaintiffs with the substantial equivalent of the materials. Thus,

---

[9] Indeed, in Plaintiffs' first Request for Production of Documents, Request #25 asked for Defendant to produce the forensic artifacts used in the data breach investigation: "Produce all documents sufficient to show Your logging, monitoring, endpoint detection and response, extended detection and response, anomaly detection, data loss prevention, security information and event management, antivirus or antimalware, and/or any other monitoring or alerting systems You employ to identify malicious activity, create forensics artifacts of the same, or to alert You of the malicious activity." *See* **Exhibit A** p. 12. Defendant objected to the request on the grounds that it seeks information and documents protected by the attorney-client privilege and/or attorney work-product doctrine. Again, Defendant essentially attempts to prevent Plaintiffs from developing any facts as to core elements of this case.

Plaintiffs' motion to compel the E & Y materials is granted."). Because Plaintiffs have a substantial need for the cyber incident overview and cannot obtain the substantial equivalent of those through other means, whether with or without undue hardship, this document is discoverable and the Court should order its production.

### C. Defendant's paltry privilege log operates as a waiver.

Lastly, "[a] proper privilege log requires a document-by-document description of the privilege asserted and the facts supporting it." *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 380 (S.D. Ind. 2009), (citing *Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006) and *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000)). Defendant has failed in its obligation to provide such a proper description or otherwise provide the information necessary for other parties or the Court to evaluate its claims of attorney-client privilege or work product protection. The description generally must include: "(1) the name and job title or capacity of the author(s)/originator(s); (2) the names of all person(s) who received the document or a copy of it and their affiliation (if any) with the producing party; (3) a general description of the document by type (e.g., letter, memorandum, report); (4) the date of the document; and (5) a general description of the subject matter of the document." *Id.* (citing *In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.*, 129 F. Supp. 2d 1207, 1218–19 (S.D. Ind. 2001)).

Defendant's sole description in the privilege log at the time of its objections was the following: "Confidential document providing information requested by counsel (McDonald Hopkins) for use in rendering legal advice regarding the incident that is the subject of this litigation." **Exhibit C.** This description does not identify any recipients, much less the affiliation of all recipients with Defendant, which is necessary to assess whether the document is protected. Plaintiffs' attempts to evaluate Defendant's claims of privilege or work product protection have

13

been even more frustrated by Defendant's shifting description of the document. Although Defendant's privilege log stated that the document "provided information requested by McDonald Hopkins for use in rendering legal advice," in response to counsel for Plaintiffs' May 8th deficiency email, counsel for Defendant stated that the document was "a draft to a government response that was shared with Taylor University by McDonald Hopkins." Exhibit B.[10] Under those circumstances, this Court should hold that Defendant has waived its privilege objections and should order production of the report and any other documents that Defendant has withheld under claim of privilege. *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 234–35 (S.D. W. Va. 2015) ("When a party provides an inadequate or untimely privilege log, the Court may choose between four remedies: (1) give the party another chance to submit a more detailed log; (2) deem the inadequate log a waiver of the privilege; (3) inspect in camera all of the withheld documents; and (4) inspect in camera a sample of the withheld documents.") (quoting *Nationwide Mut. Fire Ins. Co. v. Keit, Inc.*, 2015 WL 1470971, at *9 (M.D. Fla. Mar. 31, 2015)). At a minimum, the lack of a serious privilege log warrants an *in camera* review. *Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 525 (E.D. La. 2021) (ordering an *in camera* review of documents because the defendant provided insufficient and merely boilerplate reasons for the assertion).

### IV.  CONCLUSION

Defendant has made clear that it asserts privilege over the underlying facts regarding the

---

[10] And in any event, regardless of which description Defendant settles on, this is not an appropriate invocation of privilege. If the cyber incident overview is a confidential document providing underlying facts to use in rendering legal advice, *Upjohn* instructs that such facts are not privileged. *See* 449 U.S. at 399. This is precisely what a cyber-incident overview is: a recitation of facts aimed at discerning the nature of the cyber-attack and the scope of the data exfiltration. On the other hand, if it is a "draft to a government response that was shared with Taylor University by McDonald Hopkins," Defendant identifies nothing to support *why* the draft is privileged—assertions, for example, that the document contains legal opinions or tactics— as opposed to providing mere facts regarding the Data Breach as required by law. Defendant simply cannot assert work product protection over materials that are essentially fact-based rather than the mental impressions of an attorney.

Data Breach, Defendant's response to the Breach, the factual evidence regarding root cause, and essentially all aspects of Defendant's investigation into the Breach. The proposition that all learned facts are cloaked in privilege simply because an attorney was involved is not supported by the law and would eviscerate the fair resolution of data breach litigation. The Court should grant Plaintiff's motion to compel and order Defendant to produce the Cyber Incident Overview within ten (10) days of the Court's order. In doing so, the Court should declare that the *facts* regarding Defendant's Data Breach and its response thereto are not privileged and should not be withheld based on any such assertion. Otherwise, Defendant will make the same improper assertions during future depositions and use the privilege to prevent Plaintiffs from developing their case.

Dated: July 14, 2025              Respectfully submitted,

*/s/ Lynn A. Toops*
Lynn A. Toops (No. 26386-49)
Amina A. Thomas (No. 34451-49)
**COHENMALAD LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com
athomas@cohenmalad.com

J. Gerard Stranch, IV*
Andrew E. Mize*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
amize@stranchlaw.com

Samuel Strauss*
Raina Borelli*
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100

sam@straussborrelli.com
raina@straussborrelli.com

\* Motion for *Pro Hac Vice* Admission to be made pursuant to Fed. R. Civ. Proc. 89(b)

***Counsel for Plaintiffs and the Proposed Class***

**CERTIFICATE OF SERVICE**

      I hereby certify that, on July 14, 2025, a copy of the foregoing document was electronically filed with the Clerk of Court using CM/ECF electronic filing system, which will then send a notification of such filing to counsel of record.

                                              */s/ Lynn A. Toops*
                                              Lynn A. Toops