UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JUSTIN MCLAUGHLIN and ATURINA ESHW, on behalf of themselves, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TAYLOR UNIVERSITY,<br><br>Defendant. | No. 1:23-cv-00527-HAB-SLC |

### PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL

This discovery dispute revolves around a single document Defendant refuses to produce on grounds of attorney-client privilege and work-product protection (the "Withheld Document"). *See* ECF 57 at 1. Rather than respond to the legal arguments Plaintiffs make in their motion, Defendant responded with factual arguments that fundamentally change the nature of the dispute.[1] Initially, Defendant led Plaintiffs to believe the Withheld Document was a forensic incident report created by cybersecurity investigators for Defendant following the Data Breach.[2] Indeed, the title of the Withheld Document in Defendant's own privilege log is "**z_Overview of cyberincident-2024-03-08**." ECF 57-3 at 2 (emphasis added). Now – for the first time in this litigation – Defendant asserts, based on a self-serving declaration authored by its attorney, that "***no*** forensic

---

[1] *See, e.g.*, Defendants' Response Brief, ECF 69 at 5 (arguing "Plaintiffs mischaracterize the withheld document"); *id*. at 7 (stating "those are simply not the facts here"); *id*. at 9 (claiming "that is not what the document is"); *id*. at 10 (contending Plaintiffs' position "is simply not supported by the facts").

[2] *See, e.g.*, Defendant's Response to Plaintiffs' First Set of Requests for Production, ECF 57-1 at 21 (objecting to RFP 23, a request for "memoranda, executive summaries, analyses, and reports directed to [Defendant's] high-level executives . . . regarding the Data Breach"); *Id*. at 22 (objecting to RFP 25, a request for "reports or other documents created to document the Data Breach and its outcome"); *Id*. at 23 (objecting to RFP 26, a request for "reports or documents detailing [Defendant's] response to the Data Breach . . ."); Plaintiffs' Deficiency Letter, ECF 57-2 at 3 (twice mentioning a "forensic report" Defendant's counsel neglected to mention doesn't exist while meeting and conferring about this very issue).

report was ever prepared by a third party and that the document in question is not akin to one." ECF 69 at 7 (emphasis in original). Instead, Defendant claims the Withheld Document is actually a draft letter to the Indiana Attorney General, authored by counsel the final version of which was already produced in discovery. *Id*. at 1–2, 3 n.1, 6 (citing TU0000001–TU0000033) (the "Government Response Letter").[3] That position, however, is belied by Defendant's own privilege log and other representations. For example:

- Defendant's privilege log shows the Withheld Document was created on or about **March 13, 2024**. ECF 57-3 at 2.[4]
    - o Defendant now claims the Withheld Document was a draft letter and that it "produced the final version of the document to Plaintiffs, meaning the only document at issue in the Motion is a ***draft*** created by counsel." ECF 69 at 2 (emphasis in original). But the "final version" Defendant contends it produced to Plaintiffs is dated **January 5, 2024**, more than two months *before* the Withheld Document – the "draft" – was ever created. *See* TU0000001.[5]

---

[3] For the Court's consideration, the Government Response Letter produced in Defendant's document production at TU0000001–TU0000005 is attached as **Exhibit A**.

[4] Privilege Log identifying "draft" document:

| Date | Author(s) | Custodian(s) | Recipient(s) | File Type | File Name |
|---|---|---|---|---|---|
| 3/13/2024 | Chris Jones | Steve Elwood | | .docx | z_Overview of cyberincident-2024-03-08 |

[5] "Final Version" of draft letter produced to Plaintiffs:



2

- Defendant initially indicated the author of the Withheld Document **was "Chris Jones,"** the Vice President and Chief Information Officer for Defendant, *not an attorney*. ECF 57-3 at 2.

  - Defendant now claims the author of the Withheld Document **was an attorney** at the law firm McDonald Hopkins, PLC. *See* ECF 69 at 9 (describing Withheld Document as "a draft prepared by counsel"); *id*. at 2 ("created by counsel"); ECF 69-1 ¶ 6 ("document that McDonald Hopkins drafted").

- Defendant initially described the Withheld Document as a "document **providing information requested by counsel (McDonald Hopkins)**." ECF 57-3 at 2 (emphasis added).

  - Defendant's attorneys now claim it "was **shared with Taylor University by McDonald Hopkins**" (ECF 57-4 at 2 (emphasis added)) and describe it as "a working document **that McDonald Hopkins drafted** to respond to the Indiana Attorney General's request to Taylor University following notice of the Incident." ECF 69-1 ¶ 6 (emphasis added).

- Defendant made no privilege objection to Plaintiffs' fifth request for production, which sought all documents "**concerning** communications" between Defendant and "any third-party, **including governmental entities**" (such as a state attorney general), "that relate to . . . the Data Breach." ECF 57-1 at 8 (emphasis added).[6] But Defendant made 24 privilege objections to Plaintiffs' other 27 document requests. *See generally* ECF 57-1 at 4–26.[7]

---

[6] Of course, Plaintiffs have no way of knowing whether documents were produced or withheld in response to this request because Defendant failed to produce responsive documents "as they are kept in the usual course of business" or "organize and label them to correspond to the categories in the request," as required by law. Fed. R. Civ. P. 34(b)(2)(E)(i). Nor did Defendant "state whether any responsive materials [were] being withheld on the basis of [an] objection." Fed. R. Civ. P. 34(b)(2)(C). Thus, Plaintiffs have no way of knowing which documents are responsive to which corresponding request, or if any documents have been withheld on one of Defendant's flimsy privilege assertions.

[7] In its written discovery responses, Defendant objected to a request "to the extent it seeks documents and information protected from disclosure by the attorney-client privilege and the attorney work-product doctrine" no fewer than 24 times. ECF 57-1 at 4–26. Plaintiffs only propounded 28 requests. *See id*. Defendant's objections lack foundation and substance, and as explained below, the specificity required by Rule 34.

> Further, the "to the extent that" moniker does not satisfy the specificity requirement because the objecting party is not even definitively contending that there is an actual, objection-worthy problem in the request. **"To the extent that" is a feeble "maybe" objection behind which the objector lacks the resolve to definitively state whether something actually occurred that warrants objecting.** It is the equivalent of saying, "I am not sure that this request is worthy of objection, but if it is, then I object." Imagine trying such a tactic at trial. Counsel begins to examine a witness, and opposing counsel rises and objects "to the extent that" any of the examining counsel's questions or the witness's answers violate a privilege, rule of evidence, or rule of procedure. Besides rightfully evoking the trial judge's ire, such "generalized objections" preserve nothing on

3

- o Defendant now refers to the Withheld Document as the draft of a "**government response**" that was "created by counsel," and asserts it is therefore privileged. ECF 69 at 2, 3, 5–10, 12 (emphasis added); ECF 57-4 at 2.

Defendant tells this Court it has made "repeated attempts to explain to Plaintiffs what this document is, why it was prepared, and by whom." ECF 69 at 6. Plaintiffs readily agree Defendant has made "repeated attempts" to explain away the Withheld Document – both to Plaintiffs and now to the Court – the problem is Defendant's story has changed with each attempt, including its response to the instant motion.

First, on April 23, 2025, in its privilege log, Defendant described the Withheld Document as follows. No supplemental privilege log has been provided to Plaintiffs.

| | |
|---|---|
| Privilege Log Number: | TU_Priv_00001 |
| Document Type: | Standalone document |
| Date: | **3/13/2024** |
| Author(s): | **Chris Jones**[8] |
| Custodian(s): | Steve Elwood[9] |
| Recipient(s): | [blank] |
| File Type: | .docx |
| File Name: | **z_Overview of cyberincident-2024-03-08** |
| Subject: | [blank] |
| Privilege: | Privilege-Withhold |
| Privilege Type: | Attorney-Client Privilege; Attorney Work Product |

---

appeal. Not surprisingly, the generalized "to the extent that" objection also lacks the requisite specificity to comply with Rules 33 and 34.

*Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 447 (D. Utah 2020) (emphasis added).

Defendant's privilege objections were likely lodged for an improper purpose. *See* Fed. R. Civ. P. 26(g)(1)(B)(ii). When Defendant eventually produced a privilege log (in response to Plaintiffs' deficiency letter) listing all the documents it withheld on grounds of privilege, it listed only a single document – the Withheld Document. *See* ECF 57-3 at 2. That single document could not possibly be responsive to 24 of Plaintiffs' 28 document requests and thereby provide the basis for Defendant's 24 unsubstantiated privilege objections.

[8] Defendant identified Chris Jones as the "Vice President and Chief Information Officer of Taylor University." ECF 57-1 at 20.

[9] Defendant identified Steve Elwood as the "Director of Infrastructure and Chief Information Security Officer of Taylor University." ECF 57-1 at 20–21.

        Privilege Description:        Confidential **document providing information requested by counsel (McDonald Hopkins)** for use in rendering legal advice regarding the incident that is the subject of this litigation.

*See* ECF 57-3 at 2 (emphasis added).

Then, on May 13, 2025, in an email regarding this very issue, Defendant's counsel described the Withheld Document as "a draft to a **government response** that was **shared with Taylor University by McDonald Hopkins**." ECF 57-4 at 2.

Finally, on August 4, 2025, in a declaration,[10] a different attorney for Defendant described the Withheld Document as "a working document **that McDonald Hopkins drafted** to respond to the Indiana Attorney General's request to Taylor University following notice of the Incident." ECF 69-1 ¶ 6. Similarly, on August 4, 2025, in its response brief, Defendant characterized the Withheld Document as "a draft **prepared by counsel** in responding to a government inquiry." ECF 69 at 9.

As shown above, neither Defendant nor its attorneys can get their story straight. Initially, Defendant claimed the document was an "overview of cyberincident" drafted by an employee of Taylor University in March of 2024. *See* ECF 57-3 at 2. Now, in direct contradiction of its own privilege log, Defendant claims the document is a "draft" of a "government response," "created by counsel," the "final version" of which was sent in January of 2024 and already produced to Plaintiffs. *See* ECF 69 at 2–3. Both assertions cannot be true. While Defendant's story was evolving, it never amended or supplemented its privilege log. Yet is Defendant's burden alone to establish a privilege applies, and it cannot carry that burden by conjuring up a declaration after the fact that contradicts its own privilege log. The Court should order the Withheld Document be

---

[10] Though his declaration does not describe who he is, what role he had/has, or how he acquired the personal information he swears he possesses, the declaration was authored by Colin Battersby, who is apparently an attorney at McDonald Hopkins and the author of the letter sent to the Indiana Attorney General on January 5, 2024. *See* ECF69-1; *see also* TU0000001–05.

5

produced to Plaintiffs or submitted to the Court for *in camera* review. At this juncture, only the Court has the power to ascertain the truth.

## ARGUMENT

**A.      Even if some privilege applies, Defendant's self-contradicting response exemplifies why *in camera* review is appropriate for this discovery dispute.**

Defendant accuses Plaintiffs of being "speculative and incorrect" when describing the Withheld Document in their motion to compel. ECF 69 at 5. But all the information Plaintiff had about the document came from Defendant's privilege log, which, according to the declaration of Defendant's own attorney, should probably now also be considered speculative and incorrect.[11]

Specifically, Defendant contends: "Plaintiffs assert that the withheld document is 'not done by attorneys,' but this is both speculative and incorrect." ECF 69 at 5. Defendant then assures the Court: "The privilege log also provides all pertinent information, including the document type, date, author, custodian, recipients (if any), file type, file name, subject (if any), privilege category, privilege type, and privilege description." ECF 69 at 6. But Defendant's privilege log demonstrates the following about the Withheld Document:

- The author was a non-attorney employee of Defendant, not an attorney at a law firm providing Defendant with legal advice.

- The custodian is a non-attorney employee of Defendant, not an attorney at a law firm providing Defendant with legal advice.

- The name of the file is "*z_Overview of cyberincident-2024-03-08*," not something like "*Letter to Attorney General 2024-03-08*."

---

[11] *Compare* Privilege Log, ECF 57-3 at 2 (describing document as a "[c]onfidential document providing information requested by counsel (McDonald Hopkins)") *with* Battersby Decl., ECF 69-1 ¶ 6 (describing document as "a working document that McDonald Hopkins drafted"); Defendant's Response, ECF 69 at 9 (describing document as "a draft prepared by counsel").

6

- The document was created on or about March 13, 2024, not prior to January 5, 2024, the date on the letter Defendant contends was the "final version" of this "draft."

- The "Recipient" designation is blank, not filled in with the Indiana Attorney General, an employee of Taylor University, or an employee of any law firm representing Defendant.

- The "Subject" designation is blank, not filled in with "draft letter to attorney general" or similar language.

*See* ECF 57-3 at 2.

On its face, Defendant's response is tough to believe. It is further undermined by the fact that Defendant made no privilege objection to Plaintiffs' request for "**[a]ll** documents" – not just final versions – "**concerning** communications" between Defendant and "any third-party, **including governmental entities**," such as a state attorney general, "that relate to . . . the Data Breach." ECF 57-1 at 8 (Request for Production No. 5) (emphasis added). But Defendant had no problem lodging 24 boilerplate privilege objections to the other 27 document requests Plaintiffs propounded. *See generally* ECF 57-1 at 4–26. If the Withheld Document were, in fact, a draft letter to the Indiana Attorney General about the Data Breach that Defendant thought was privileged, certainly Defendant would have asserted a privilege objection in response to this request for production. Nevertheless, no such privilege was asserted (probably because, at the time, Defendant had not yet taken the position that the Withheld Document is not an "Overview of cyberincident," as its title suggests, but rather a draft letter prepared by counsel for a government entity). Defendant's inconsistent explanations not only strain credulity but cry out for judicial intervention through *in camera* review.

**B.    Defendant has waived the attorney-client privilege and work-product protection over the Withheld Document.**

As Plaintiffs explained in their motion, communication of a fact to an attorney – or vice versa – does not magically make the fact itself privileged. *See* ECF 57 at 2 (quoting *Upjohn Co. v. United States*, 449 U.S. 383 (1981)). "The privilege only protects disclosure of communications;

7

it does not protect disclosure of the underlying facts by those who communicate with the attorney." *Upjohn*, 449 U.S. at 395. That is, regardless of the author, relevant facts do not become undiscoverable merely because they are shared with (or by) an attorney. And moreover, if a communication cloaked with the attorney-client privilege is disclosed to a third party, the privilege is waived.

Here, Defendant contends: "Plaintiffs argue that they cannot get the information contained in the withheld document, but this is simply not supported by the facts. Taylor University already produced the final version of the draft currently being withheld." ECF 69 at 10. If the facts are as Defendant purports them to be, Defendant has already waived any privilege over the Withheld Document, not only as to the content of the final version of the draft but also the subject matter of the disclosure. Further, as Plaintiffs argue in their motion, Defendant also waived its asserted privileges by producing a woefully inadequate privilege log. *See* ECF 57 at 13–14. And if the Withheld Document is as Defendant claims it to be, that privilege log was not only inadequate but overtly false – providing a misrepresentation Defendant never corrected by providing an amended or supplemental privilege log, though it was under a duty to do so. *See* Fed. R. Civ. P. 26(e)(1)(A).

Finally, regardless of whether the Withheld Document is a draft letter or incident report, the content of the document is likely entirely factual, without the opinions or mental impressions of an attorney. Such documents receive far less protection from the work-product doctrine, as Plaintiffs discussed in their motion. *See* ECF 57 at 5 (citing *Vardon Golf Co., Inc. v. BBMG Gold Ltd.*, 156 F.R.D. 641, 646 (N.D. Ill. 1994); *Ferrell v. U.S. Dep't of Housing and Urban Development*, 177 F.R.D. 425, 431 (N.D. Ill. 1998)). And insofar as any "mental impressions, conclusions, opinions, or legal theories" do appear in the Withheld Document, Plaintiffs are confident the Court can uphold its duty to "protect against disclosure" of such information by

requiring production of the Withheld Document in a court-approved, redacted form. Fed. R. Civ. P. 26(b)(3)(B).

## CONCLUSION

Even if the Court finds Defendant has not already waived the very privileges it seeks to invoke, the inconsistencies created by Defendant's response demonstrate why *in camera* review of the Withheld Document is not only appropriate but necessary to resolve this discovery dispute. Defendant should be ordered to produce the document within 10 days of the Court's ruling, with any actually privileged information redacted, and Defendant should be sanctioned *sua sponte* for providing a discovery response that was materially false when made and for wasting the time of both the Court and Plaintiffs in litigating this dispute.

Dated: August 11, 2025             Respectfully submitted,

/s/ *Amina A. Thomas*
Lynn A. Toops (No. 26386-49)
Amina A. Thomas (No. 34451-49)
**COHEN & MALAD LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com
athomas@cohenmalad.com

J. Gerard Stranch, IV
Andrew E. Mize
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
amize@stranchlaw.com

Samuel Strauss
Raina Borelli
**STRAUSS BORRELLI PLLC**

9

One Magnificent Mile  
980 N. Michigan Ave., Suite 1610  
Chicago, IL 60611  
Tel: (872) 263-1100  
sam@straussborrelli.com  
raina@straussborrelli.com  

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF system this the 11th day of August, 2025.

<u>/s/ Amina A. Thomas</u>  
Amina A. Thomas (No. 34451-49)