UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JUSTIN McLAUGHLIN and ATURINA ESHW, *on behalf of themselves, and all others similarly situated*, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>TAYLOR UNIVERSITY, )<br>)<br>Defendant. ) | Cause No. 1:23-cv-00527-HAB-ALT |

## OPINION AND ORDER

This case is before me on Plaintiffs' motion to compel. (ECF 57). Plaintiffs seek discovery of a single document, designated "z_Overview of cyberincident-2024-03-08" ("Document") in Defendant Taylor University's ("Taylor") privilege log. (ECF 57-3). At a September 10, 2025, hearing, I ordered Taylor to submit the Document for an *in camera* review. (ECF 84). Taylor did so. (ECF 85). Having reviewed the Document, I find that Taylor has failed to carry its burden of demonstrating privilege. I will GRANT the motion to compel.

I. **Factual and Procedural Background**

This case arises out of a 2023 data breach ("Breach"). (ECF 1). Taylor discovered the Breach on May 18, 2023, and hired outside counsel, McDonald Hopkins, to assist in the investigation. (ECF 69 at 2). McDonald Hopkins, in turn, hired a third-party cybersecurity expert. (*Id.*).

Candidly, I have read the Document and Taylor's briefing on the motion to compel, and I have no idea who drafted the Document. The Document has no author attribution. And Taylor's briefing is clear as mud. Take this paragraph in its response, for instance:

> Plaintiffs assert that the withheld document is "not done by attorneys," but this is both speculative and incorrect. The privilege log describes the withheld document as a "[c]onfidential document providing information ***requested by counsel*** (McDonald Hopkins) for use ***in rendering legal advice*** regarding the incident that is the subject of this litigation." (Dkt. 57-3 (emphasis added).) The privilege log also provides all pertinent information, including the document type, date, author, custodian, recipients (if any), file type, file name, subject (if any), privilege category, privilege type, and privilege description. (*Id.*) When questioned by Plaintiffs' counsel about this document, Taylor University's counsel further clarified the withheld document "is a draft to a government response that was shared with Taylor University by McDonald Hopkins." (Dkt. 57-4.) Taylor University's counsel also informed Plaintiffs' counsel that the final version of the working document was produced to Plaintiffs at TU0000001-TU0000033.

(ECF 69 at 5-6 (original emphasis)). Within a single paragraph, Taylor describes the document as "requested by counsel" and "shared . . . by" counsel. A fair reading of the paragraph is that counsel requested the Document from the third-party expert and shared it with Taylor. But that reading is disclaimed within the same brief, where Taylor asserts that the Document is "a ***draft*** created by counsel." (*Id*. at 2 (original emphasis)). How is the Document both "requested by" and "created by" the same law firm? To quote a forty-three old candy commercial, "the world may never know."[1]

Taylor's ever-changing explanation of the Document in the briefing mirrors Taylor's representations to Plaintiffs. Taylor's privilege log indicates that the author of the Document was "Chris Jones," Taylor's Vice President and Chief Information Officer. (ECF 57-3). We now have a third potential author.

Taylor's main assertion is that the Document is a "draft prepared by counsel in responding to a government inquiry[.]" (*Id*. at 9). Having reviewed the Document, that appears inaccurate. The Document is a two-page, bullet point recitation of the Breach. It is purely factual, covering topics like "how the intrusion happened," "how it was discovered," "what steps have been taken

---

[1] Tootsie Pops – "How Many Licks?" (Commercial, 1982), https://www.youtube.com/watch?v=5ZtbCOpx8Sk (last visited Nov. 17, 2025).

to help prevent this from happening again," and others. There is no indication it is a "draft" of the response to the Indiana Attorney General—it's not even in letter form. And, if one believes Taylor's privilege log, the Document was prepared two months after the "final version" of the letter—the privilege log states the Document was created on March 13, 2024, while the letter to the Indiana Attorney General was sent January 5, 2024. (ECF 72 at 2).

## II.     Legal Analysis

### A.     *Taylor Has Not Demonstrated that the Document Is Attorney Work Product*

Under Rule 26(b)(3) [the work-product doctrine], a party claiming protection must demonstrate that the materials sought are: (1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party or by or for a party's representative. *Boyer v. Gildea*, 257 F.R.D. 488, 490-91 (N.D. Ind. 2009).

In this case, the Document is very obviously a document. As to the third factor, although it is not clear who created the Document, there are three possible scenarios. Based on Taylor's convoluted description of the author of the Document it seems like it was either created by a third-party (or an employee of Taylor) for counsel, created by counsel for the client, or created by a third-party for counsel which was then sent on to the client. (*See* ECF 69 at 5-6). According to Taylor's privilege log, the Document was drafted by Chris Jones, an employee of Taylor. (*See* ECF 57-3 at 2). These scenarios satisfy this third factor. In each scenario, there is an attorney or a client involved as required by the rule. Lastly, the rules require the Document have been prepared in anticipation of litigation. This last factor is extremely unclear.

When a party asserts the work-product doctrine, the burden is on that party to show the doctrine applies. The party must show that "the primary motive behind the creation of the document or investigation must be to aid in the adversarial trial process itself." *Ferguson v. Lurie*,

3

139 F.R.D. 362, 367 (N.D. Ill. 1991) (citation omitted). It is not enough to rely on the fact that litigation is occurring. The party must show the document's connection to the litigation. *See Charvat v. Valente*, 82 F. Supp. 3d 713, 719 (N.D. Ill. 2015) (explaining the commencement of the lawsuit "does not automatically qualify" a document as work product (citation omitted)). For instance, if materials or investigative reports were created in the ordinary course of business, they do not qualify as work product. However, "[i]f the material or report came into existence *because* of the litigation or because of an existing articulable claim likely to lead to litigation, then the doctrine can apply." *Med. Assurance Co. v. Weinberger*, 295 F.R.D. 176, 183 (N.D. Ind. 2013) (emphasis added) (citation omitted).

In the case at hand, although the Document was a communication either to or from an attorney, we do not know who wrote it and for what purpose. Taylor's main assertion is that the Document is a "draft prepared by counsel in responding to a government inquiry." (ECF 69 at 9). But Taylor's explanation of the Document does not make sense. First, it does not appear to be a draft of the response to the Indiana Attorney General. As noted above, the Document is a two-page, bullet point, factual recitation of the Breach, and not a letter. Secondly, according to the privilege log, the Document was prepared two months after the "final version" of the letter. All this makes Taylor's position difficult to believe. (ECF 72 at 2).

These facts do not connect the Document to the litigation as necessary. It is true that the Document is the same subject of the litigation, but that is not enough. In *Finnegan v. Myers*, the court found a lack of sufficient explanation of a document and did not allow the defendant to invoke the work-product doctrine. No. 3:08-CV-503-RL-CAN, 2014 WL 12789809, at *5 (N.D. Ind. Feb. 18, 2014). In that case, the defendant had deficient privilege logs which failed to explain "who authored or received which documents; the topic of the documents; or a clear description of

4

the connection between the documents and impending litigation." *Id.* Although the documents were prepared during an investigation, without sufficient connection to the litigation at issue, the court refused to find the documents worthy of the work-product doctrine. *Id.* In other words, "some clues" are not enough. *Id.*

Here, I have the Document itself, not just the privilege log. Taylor has failed to clearly articulate who authored or received the Document, the purpose of the Document, and the connection to the litigation. It is not evident from the Document or any supporting materials. With such similar deficiencies as in *Finnegan*, and without Taylor making sufficient connection between the Document and the litigation, I must find that Taylor has not demonstrated the applicability of the work-product doctrine.

**B.     *Taylor Has Not Demonstrated that the Document Is a Privileged Attorney-Client Communication***

The Seventh Circuit has adopted general principles of the attorney-client privilege which include seven elements. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). Attorney-client privilege exists:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Id.*; *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir. 1983). The burden falls on the party seeking to invoke the privilege to establish all the essential elements. *White,* 950 F.2d at 430. The party invoking the privilege must "establish by a preponderance of the evidence: (1) the existence of an attorney-client relationship and (2) that a confidential communication was involved." *Finnegan,* 2014 WL 12789809, at *6 (citation omitted).

Here, there is an obvious problem with Taylor's attempt to invoke the attorney-client privilege: we do not know the author of the Document. There are three possible scenarios as explained above. (*See* ECF 69 at 5-6). However, the only way the Document is protected by the attorney-client privilege is if it was a communication by or to the client. *See White,* 950 F.2d at 430. This would also include the client's agent. *Ranburn Corp. v. Argonaut Great Cent. Ins. Co.*, No. 4:16-CV-88-RL-PRC, 2018 WL 7953292, at *6 (N.D. Ind. Nov. 26, 2018). A client's agent can extend as far as consultants hired by the attorney on behalf of a client. *Id.* at *7.

According to Taylor's privilege log, the disputed document was an "[o]verview of cyberincident" drafted by Chris Jones, Taylor's Vice President and Chief Information Officer in March 2024. (*See* ECF 57-3 at 2). As an employee of Taylor, the client, he would likely be acting as an agent in communicating with counsel. If that communication was for the purpose of legal advice, it would likely be privileged. However, now, Defendant says the Document is a "draft" of a "government response," "created by counsel," the "final version" of which was sent in January 2024. (*See* ECF 69 at 2-3). This second version would not be privileged because it is not a client communication. *See White*, 950 F.2d at 430 ("[W]hen information is transmitted to an attorney with the intent that the information will be transmitted to a third party . . . such information is not confidential.") (ellipses in original) (quoting *Lawless*, 709 F.2d at 487).

As the party with the burden of proof, Taylor's changing position on the author of the Document is problematic. In *Finnegan*, the court explained that to evaluate whether certain communications were privileged, the court needs information "as to who authored or spoke the communications and the purpose of the communications." 2014 WL 12789809, at *6. Taylor has changed its position on both these points and provided no additional information proving the author or purpose of the Document. The Document has no name attached to it and no obvious

6

purpose, being in list format. Because Taylor has failed to demonstrate the Document is a client communication, I find the attorney-client privilege cannot be invoked.

### III. Conclusion

For these reasons, Plaintiffs' motion to compel (ECF 57) is GRANTED. Taylor is ORDERED to provide a copy of the Document to Plaintiffs within ten days of this Opinion and Order. Plaintiffs are DIRECTED to file any request for attorney's fees arising out of its motion within fifteen days of this Opinion and Order.

SO ORDERED.

Entered this 17th day of November 2025.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge